MILLS NOVELTY COMPANY v. MILLSAPS.

Opinion delivered May 2, 1927.

1. PLEADING—REFUSAL TO STRIKE PARAGRAPHS.—Refusal of the court to strike paragraphs in answer and cross-complaint, which were merely statements of matters of defense in greater detail than necessary, *held* no error.

2. SALES—MEETING OF MINDS.—In an action on a contract of sale whether there was a meeting of minds as to the terms of payment was a question for the jury.

3. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict upon conflicting evidence is conclusive.

4. PRINCIPAL AND AGENT—AUTHORITY OF AGENT AS QUESTION FOR JURY.—Whether an agent, who inserted a clause in the contract of sale as to payment from receipts was acting within the scope of his authority *held* for the jury.

5. TRIAL—REPETITION OF INSTRUCTIONS.—It was not error to refuse correct instructions fully covered by other instructions given by the court.

6. REPLEVIN—CROSS-COMPLAINT.—Under Crawford & Moses' Dig., § 1195, a defendant may recover by way of counterclaim only when plaintiff's action is for the recovery of money, but a counterclaim cannot be asserted where a plaintiff's cause of action is merely for the recovery of specific property.

Appeal from Garland Circuit Court; *Earl Witt,* Judge; affirmed.

*Sydney S. Taylor,* for appellant.

*C. T. Cotham,* for appellee.

WOOD, J. The Mills Novelty Company, plaintiff, instituted this action against R. L. Millsaps, the defendant, to recover the possession of a musical instrument called a violano. The plaintiff alleged that it had a special ownership in the instrument, having retained title under a sales contract made with the defendant. It was alleged, in substance, that the plaintiff entered into a contract with the defendant to sell the latter the musical instrument for the sum of $3,000, the sum of $250 to be paid in cash, $200 on installation of the instrument, and the balance of $2,550 in twenty-five installments of $102 each, the first payment to be made on September 25, 1924, and the balance on the 25th of each month thereafter

until the full amount was paid. The plaintiff was to retain title until the full amount of the purchase money was paid. The instrument was delivered under the contract of purchase, and the sum of $450 was paid, and a note for $2,550 was executed on May 15, 1924, by defendant to the plaintiff, to be paid in installments as indicated. The plaintiff set up the contract and note, alleged that the defendant had failed to make the payments in accordance with his contract, and, after repeated demand made upon him so to do, upon failing to make the first payment all deferred payments became due, and that, under the terms of the contract, the plaintiff had the right to the possession of the instrument and to retain all payments that had been made to cover the expense of repossession, wear and tear on the instrument. The plaintiff made the sales contract and note exhibits to his complaint. The plaintiff prayed judgment for the possession of the instrument.

The defendant, in his answer, admitted that he had executed a written contract for the purchase of the violano as alleged in the complaint, but denied that the exhibit attached to the complaint was a true copy of the contract. He admitted that he had refused to pay the account demanded of him by the plaintiff, and he refused to return the violano. He alleged that he had made a total payment on the deferred purchase money note of $1,034.38, and had tendered the balance due of $27.25, according to the contract, on January 1, 1926, which the plaintiff refused to accept. He denied other allegations of the complaint, and alleged, by way of cross-complaint, that he did not enter into the contract, a copy of which he exhibits, but alleged that the agent of the plaintiff gave him a copy of the contract, which he signed, and a copy of which he made an exhibit to his answer. He stated that the contract he signed contained, among other things, the following: "This instrument is to take in sufficient money to meet monthly payments, or we to cut monthly rate to conform with the receipts."

In four paragraphs of his answer and cross-complaint the defendant set up certain correspondence with plaintiff and certain negotiations with W. H. Bickett, the soliciting agent of plaintiff, prior to and leading up to the contract which was executed between the plaintiff and the defendant. Defendant stated that, if plaintiff had accepted defendant's tender of January 1, 1926, the defendant would have paid the sum of $18.63 in excess of the receipts taken in by the machine since the same was installed in the defendant's place of business. He alleged that the plaintiff, on March 5, 1926, wrongfully took possession of the instrument and thereby destroyed the market value of thirty-two rolls of music, valued at $128, which the defendant had purchased to be used in connection with the machine; that he had been compelled to employ an attorney to defend the action of plaintiff against him, and had been deprived of the use of the machine at the height of the season in Hot Springs, when he would have realized a profit from the use of the machine, all to his damage in the sum of $500; that, by the wrongful act of plaintiff in taking the machine, he has been damaged in the further sum of $1,524.38, being the amount which he had paid the plaintiff on the purchase price of the machine; that the total amount of his damage by reason of plaintiff's wrongful act in taking his machine amounted to $2,152.38, for which sum he prayed judgment.

The plaintiff moved to strike from the answer and cross-complaint those paragraphs relating to the preliminary negotiations between the defendant and Bickett, plaintiff's agent, before the execution of the contract, on the ground that these were merged in the written contract and were irrelevant and immaterial. The court overruled the motion, and the plaintiff duly excepted. The plaintiff answered the cross-complaint, and alleged that Bickett, its soliciting agent, had no authority to bind plaintiff by any contract. His authority was limited to taking orders, and the contract sued on specifically stated that it was subject to the acceptance of

the plaintiff. The plaintiff entered a general denial to the other allegations of the cross-complaint.

Mrs. Chalder, the auditor of the plaintiff, testified that the plaintiff received the order of the defendant for the violano through the mail from W. H. Bickett, together with the note as set out in the complaint and the cash payment of $250; that Bickett was a salesman of the plaintiff to solicit orders on a commission basis. Witness introduced and exhibited the original contracts and the note which are set forth in the complaint. She introduced the report of Bickett on the defendant, and his letter accompanying the order, and also, by request of defendant, a letter of the defendant of May 22, 1924, to the plaintiff, in which the defendant states that he had received the letter of plaintiff accepting defendant's order for the violano through the plaintiff's agent, Bickett, and further states: "I presume you are aware of Mr. Bickett's representation with reference to service which I am to have on this instrument for two years." Also defendant's letter of May 28, 1924, in reply to plaintiff's letter of May 26, in which the defendant states that plaintiff's letter practically covers the guaranty as to the instrument, which is satisfactory; also defendant's letter of June, 1924, in which defendant states that the note should be dated June 14, 1924, and the first payment due July 14, 1924, and that the instrument had not been properly adjusted, and requested plaintiff to send its agent to correct the trouble, and concluded the letter, "when this matter is attended to and the note is changed to conform with Bickett's agreement, I will adhere to my part of the contract."

On July 7, 1924, defendant wrote to the plaintiff, in which letter he stated: "You had better send your Mr. Bickett here at once, as I want to see him in reference to statements he made to me before making this final payment" (referring to the payment of $200 to be made at installation). In another letter of the same date the defendant stated that he expected the plaintiff to live up

to Mr. Bickett's agreement, provided defendant fulfilled
his part. In a letter of August 15, 1924, the defendant
wrote, in reply to plaintiff's letter of August 5, in which
the defendant stated that plaintiff's Mr. Bickett had made
a "bunch of promises" which plaintiff was inclined to
ignore; that Bickett first promised to give free service on
the instrument for two years; that the receipts of the
instrument were guaranteed to take care of the notes. In
this letter is the further statement that defendant wanted
a thorough understanding with the plaintiff with refer-
ence to Bickett's agreement, and asking plaintiff if it was
going to adhere to that agreement, and stating, among
other things, "I want your good will, and my good will
certainly ought to be worth something to you—at least
worth enough for you to adhere to your agent's agree-
ment." Defendant further stated that, upon receiving
a reply, he would finish up final payment and remit
receipts since the instrument was fully installed.

On August 27, 1924, defendant, in answer to plain-
tiff's letter of August 23, refers to differences that had
arisen between them, and reiterates the agreement that
he had with Bickett, and said: "It seems that the con-
tract sent you by Mr. Bickett must have been changed
after leaving my hands. I will also state, for your infor-
mation, that the writing in my contract by Mr. Bickett
states that the receipts of the instrument must take
care of monthly payments." In his letter of September
13, 1924, defendant, in answer to letter of plaintiff and
a telegram, stated that he was not going to send the con-
tract in his possession to the plaintiff, but that plaintiff
was at liberty to have some one come down and inspect it,
if plaintiff doubted what defendant stated. Defendant
reiterated that he was willing to fulfill his part of the
contract and pay the balance of $200 and what the instru-
ment had taken in since installation, and that he had kept
a correct account of the monthly receipts. On December
1, 1924, the defendant wrote that plaintiff's agent had
been down and left a paper showing that the defendant

owed a balance of $2,500, and protesting that defendant only owed $2,450. ·In this letter defendant inclosed a check for $102.50, and stated: "I am not inclined to send anything further until you change your records accordingly." Other letters followed with reference to orders for music, etc., which are immaterial to this controversy, and on June 5, 1925, the defendant wrote the plaintiff as follows: "Referring to your letter of June 2, we regret that it is again necessary to call your attention to the fact that our violano contract clearly specifies that payments on the notes shall not be demanded except as receipts from the instrument are sufficient to take care of said notes. Since mailing you a check on May 1 our violano has taken in only $38.60." And again, on June 15, defendant wrote, in answer to a letter of plaintiff of June 10: "We are pleased to call your attention to the fact that there is a clause in our contract reading as follows: 'This instrument is to take in sufficient money to meet its monthly payments, or we to cut monthly rate to conform with receipts.' If your copy of our contract does not contain this clause it is because it was erased after leaving our hands."

The further testimony of plaintiff was to the effect that it received the order as set forth in its complaint; that the original order was in the same condition as when it was received through its salesman, Bickett; that Bickett had no authority to grant any special terms, and the plaintiff's contract with him provided that all orders taken by him were not binding on the plaintiff until accepted by plaintiff; that the plaintiff had never sold a machine on the terms claimed by defendant.

It was further shown by the plaintiff that the defendant made no other claim in regard to a definite agreement than that set forth in plaintiff's sales contract until August 15, 1924. When defendant began to fall behind on his installments and declined to make further payments, and plaintiff made all reasonable efforts to adjust the claim without litigation, upon the defendant failing to make further payments, the plaintiff declared

the whole amount due under the contract. There was testimony by a witness for the plaintiff to the effect that plaintiff sent its agents in the fall to adjust the differences with the defendant, if possible, and at that time, after plaintiff exhibited its contract to the defendant, defendant was to pay from October 21, 1924, on, the sum of $102 a month. In other words, he was to comply with the full conditions of the contract. Witness stated that he did not know why the defendant changed his attitude at that time with reference to the contract, unless it was because the instrument was paying and defendant wanted it, and the only way he could get it was to comply with the contract that witness laid down in front of him. It was further shown that the plaintiff sent the defendant a sworn statement on December 29, 1925, showing the payments that had been made by him and the balance due; that the defendant refused to pay, and the plaintiff demanded the return of the machine, and the defendant refused to deliver the same.

The defendant testified, in substance, that he became interested in the purchase of a violano through correspondence with the plaintiff, and that the plaintiff wrote defendant that its salesman, Bickett, would call on him, which Bickett did, and, after discussing the matter of the contract, he refused to make a contract unless Bickett would guarantee the receipts so that all the money he would pay out would be the original $450. The salesman made out two contracts, and left one copy with the defendant. Over the objection of the plaintiff, the defendant introduced the contract, which was precisely the same as the contract set forth in the complaint, except, after the order for the violano, describing same and giving its price and the $200 first payment to be made upon the installation of the instrument, is this clause: "This instrument to take in sufficient money to meet its monthly payments, or we to cut monthly rate to conform with receipts." The contract, as thus signed by the defendant, was sent to the plaintiff and accepted

by it.  The salesman wrote the order which the defend-
ant has in his possession first, and wrote the one he sent
the plaintiff second.   Both contracts, at the time witness
signed the same, were precisely like the one the defend-
ant offered in evidence.   The contract which the plain-
tiff offered in evidence contained the defendant's signa-
ture, but defendant did not sign it as it is.   Defendant
was asked if he meant to say that the contract in suit had
been changed, and answered, "Well, I mean to say that
the instrument I signed had the same writing as mine,
because I stood right over the man and saw him put it
in there; it is not any supposition on my part."   Witness
had never received a copy of the contract from the plain-
tiff since he signed it, and had not asked for one, as he
thought the plaintiff's was like the one defendant had.

Another witness testified for the defendant to the
effect that he was present and saw Bickett fill out the
contract offered in evidence by the defendant, and that
the other instrument signed by the defendant was iden-
tical with it.

The plaintiff presented prayers for instructions
which, in effect, would have told the jury that the burden
was on the plaintiff to establish the contract on which the
suit is based, and that, if the plaintiff established the con-
tract and the defendant failed to comply with its terms,
the plaintiff would have the right to retake the property.
Also, that the defendant was bound to ascertain the
nature and extent of the authority of Bickett, and that
the contract on its face showed that Bickett had authority
merely to solicit orders, and that the contract did not
become complete until accepted by the plaintiff; that all
negotiations preliminary to the signing of the contract
were merged in the contract, and plaintiff would not be
bound by any parol contemporaneous agreements not
incorporated therein; that, if the defendant executed the
contract in suit, he would be bound by its terms, even
though the agent made a copy containing a different pro-
vision. on the ground that the loss must fall on the one

who contributed most to produce it; that, if the defendant signed the contract introduced by the plaintiff, the burden would be upon the defendant to show that it contained other provisions at the time he signed the same.

The plaintiff further asked the court to instruct the jury that, if the erasures were made by its agent Bickett without any authority, such an act on his part would be a mere spoliation, and would not be binding on the plaintiff; and, further, that, if the defendant, with knowledge of the previous alteration, made payments under the terms of the contract, such action on part of defendant would be a waiver of any claims of alteration and a ratification of the contract; and, further, that, under the terms of the contract, the plaintiff was entitled to retain all payments made to it by the defendant to cover usage, wear and tear on the machine.

The court refused plaintiff's prayers for instructions, and instructed the jury, on its own motion, to the effect that the issue is, what was the contract entered into by the plaintiff and the defendant, the only issue being the right to the possession of the instrument; that, if the contract was as claimed by the plaintiff, the plaintiff would have a right to the possession of the instrument, and the burden was on the plaintiff to establish the contract as alleged in its complaint; that, if the defendant did not execute the contract as alleged in the complaint, then plaintiff would not be entitled to the possession of the instrument.

The court further instructed the jury that the plaintiff would not be bound by the contract made by its representative if the representative exceeded his authority as plaintiff's agent; that the defendant, however, would have a right to rely upon the authority of the agent to enter into a contract and to make provisions as to how the instrument would be paid for, if that agent had been held out to him as being the agent of the plaintiff with authority to act for it in the matter of the purchase of the instrument; that it was for the jury to determine

from the evidence whether the agent did have authority to represent the plaintiff and to make the stipulation a part of the contract which the defendant says was made at the time he agreed to purchase the instrument.

The court further instructed the jury that, if the agent of the plaintiff exceeded his authority in making a contract that he was not authorized to make, the plaintiff would be required to rescind the action in that respect within a reasonable time after it had information that he had exceeded his authority, and, if the plaintiff waited an unreasonable time to rescind the action of its agent, it would be estopped to deny his authority to make the contract which the defendant claims he made.

The court further instructed the jury that, if the defendant, knowing that the contract was not as he claimed, afterwards ratified the same by making payments thereon, he would be bound on the contract as contended by plaintiff. On the other hand, if the plaintiff, knowing that the contract was as claimed by the defendant, afterward entered into an agreement with the defendant by which he could go ahead and make the payments on the instrument as the defendant claimed he had a right to do under the contract, then the plaintiff would not be entitled to recover.

The verdict was in favor of the defendant, and from a judgment entered in the defendant's favor the plaintiff duly prosecutes this appeal, and the defendant cross-appeals from the judgment of the court dismissing his cross-complaint.

1. There was no error in the ruling of the court in refusing to strike certain paragraphs of the defendant's answer and cross-complaint. These paragraphs were merely a statement in greater detail than was necessary of the appellee's contention that he did not enter into the contract as set up in appellant's complaint, and setting forth appellee's own version of the contract between him and the appellant.

2. We have set forth fully the substance of the material testimony in the case, and we are convinced,

from a consideration of this testimony, that it was an issue of fact for the jury, under the evidence, as to whether or not there was a meeting of the minds of the parties upon the instrument which is the foundation of this action, and which, appellant claimed, evidenced the contract between it and the appellee. The issue was submitted to the jury under correct instructions. The jury might have found, from the testimony for the appellee, that, although the instrument upon which the action was based bore his signature, nevertheless, at the time he signed the same it was not the instrument introduced in evidence by the appellant. On the contrary, that it contained the additional clause above set forth as testified by the appellee and an eye-witness who corroborated his testimony.

Even if it be conceded that the appellant's agent, Bickett, exceeded his authority in inserting the clause in the contract which the appellee claims was inserted therein before he signed the same, still the fact remains that, if appellee told the truth, he demanded that this clause be inserted in the contract, and it was inserted therein before he signed the same. Appellee testified that the contract containing this clause was sent to the appellant and that the violano was shipped on this order —the only order signed by him. If the appellant accepted the order as thus written, then it approved and ratified the contract as thus written by Bickett, even though he did not have authority to insert the clause. If the appellee told the truth, and the order or contract, when it was sent by Bickett to the appellant, had been altered so as to eliminate the clause which appellee claims it contained when he signed it, then there was no meeting of the minds of the contracting parties on the instrument which is the foundation of this action. The jury believed the testimony of the appellee, and its verdict is conclusive here.

Moreover, it occurs to us that it was likewise an issue for the jury, under the evidence, as to whether or

not Bickett, as the agent of appellant, if he inserted the clause in the contract as stated by the appellee, was acting within the scope of his authority as agent. The court likewise submitted that issue to the jury, under correct instructions applicable to the facts of this record, in harmony with the familiar principles of law often announced by this court. See *American Southern Trust Co.* v. *McKee, ante,* p. 147, 293 S. W. 50, where the authority of general and special agents is discussed. Likewise the issue as to whether or not there was a ratification by either of the parties was correctly submitted to the jury. Indeed, we are convinced that all issuable facts presented by the testimony in this record were fully and fairly submitted to the jury by the court's charge. Such of appellant's prayers as were correct and were refused by the court were fully covered by instructions given by the court on its own motion.

3. The appellee is not entitled to recover in this action on its cross-complaint, and the court therefore did not err in sustaining the appellant's demurrer thereto. The appellant did not ask for any money judgment against the appellee. It only set up the alleged contract of purchase and alleged its breach by the appellee, and prayed for judgment, under the terms of the contract, for the recovery of the violano. Under § 1195, C. & M. Digest, the defendant in an action may recover by way of counterclaim on any cause of action arising either upon contract or tort, where the action by the plaintiff against the defendant is for the recovery of money; but a counterclaim cannot be asserted where the cause of action by the plaintiff against the defendant is merely for the recovery of specific property. *Smith* v. *Glover,* 135 Ark. 531, 205 S. W. 981; *Coates* v. *Millner,* 134 Ark. 311, 203 S. W. 701; *Crawford* v. *Slayton,* 155 Ark. 283, 244 S. W. 32. See also *Commercial Credit Co.* v. *Stanley,* 164 Ark. 473, 262 S. W. 318.

The court correctly instructed the jury that the only issue for it to determine was the right to the possession

of the violano.  The testimony adduced on the trial of
that issue developed ancillary issues, such as alteration,
spoliation and ratification, but these were only subsidiary
and subordinate to the main issue.  The appellee, in its
cross-complaint, did not ask for any damage by reason
of injury to the property by the appellant while in the
latter's possession under the writ of replevin.  The ver-
dict of the jury and the judgment of the court awarded
the appellee the right to the possession of the instru-
ment.  We find no errors prejudicial to the appellant in
the rulings of the trial court, and its judgment is there-
fore affirmed.